OPINION OF THE COURT
Simons, J.
Defendant appeals from an order of the Appellate Division affirming a judgment of Supreme Court, bringing up for review a prior order denying suppression, which convicted him of criminal possession of a controlled substance in the fifth degree (cocaine). The issue is whether the police lawfully searched a closed container found in defendant’s car, without a warrant, as part of an inventory search. The Appellate Division majority, finding that “[cjoncededly the police had the right to make an inventory search of the car”, approved the seizure. Two Justices dissented believing the scope of the search exceeded lawful bounds because it included opening the closed paper bag. There should be an affirmance.
The discovery was made after defendant was stopped by two police officers who had observed him turning left without signaling and driving his automobile without a taillight. When he was questioned defendant was unable to produce his driver’s license and admitted that it had been suspended. He was placed under arrest for driving with a suspended license (Vehicle and Traffic Law, § 511) and driven to the police station in the squad car by one of the arresting officers. The other officer followed in defendant’s car. While driving it, he noticed a brown bag suspended on a wire from under the dashboard. At the station house the police conducted an inventory search of the car and vouch-ered its contents. In the course of that search, they opened the paper bag and discovered the cocaine which supports the charge before us. Defendant moved before trial to suppress the evidence on both State and Federal grounds as the product of an unlawful warrantless search. The courts below denied the motion.
It is settled law that the police may search an impounded vehicle to inventory its contents (South Dakota v Opperman, 428 US 364). Such searches, conducted as routine *389 procedures, are permitted to protect an owner’s property while it remains in police custody, to protect the police against false claims for missing property and to protect the police from potential danger (id., at p 369; see Cady v Dombrowski, 413 US 433). In Opperman and subsequent decisions, the Supreme Court has distinguished the “probable cause” standard applied to investigative searches from the standard of “reasonableness” applied to routine administrative acts such as noninvestigative police inventories of vehicles lawfully in governmental custody and held that once a court determines that the purpose of a search by the police was to inventory the effects of a person under lawful arrest, rather than to discover evidence of a crime, the “salutary functions of a warrant” no longer apply (id., at pp 370-371, n 5; United States v Chadwick, 433 US 1, 10, n 5). Constitutionality is established upon proof that the search was reasonable. Until the Supreme Court decided Illinois v LaFayette (462 US 640, 103 S Ct 2605), however, the parameters of the “reasonableness” standard applied to inventory searches, as they applied to the search of individual items, were left to a review of the facts and circumstances of each case (South Dakota v Opperman, supra, at p 375).
Thus it was that when we considered the inventory search of a closed cigarette case in People v Roman (53 NY2d 39), we believed ourselves constrained by the recent Supreme Court cases involving closed containers and held the inventory search unreasonable. We did so notwithstanding that some of our prior decisions had approved the examination of closed containers as part of an inventory search (see People v Perel, 34 NY2d 462; People v Sullivan, 29 NY2d 69, 72). We particularly noted the Supreme Court’s statement in Arkansas v Sanders (442 US 753) that its prior decisions upholding warrantless searches of automobiles had involved “searches of some integral part of the automobile” (id., at p 763; but cf. United States v Chadwick, supra, at p 10, n 5). Accordingly, we held that the rationale supporting the right of the police to conduct inventory searches did not include a right to open a closed and partially opaque cigarette case found on the floor of an impounded automobile. We deem it desirable to keep the *390 law of this State consistent with the Supreme Court’s rulings on inventory searches, however, and since the court has now unanimously approved the inventory search of closed containers, we affirm.
In Illinois v LaFayette (462 US 640, 103 S Ct 2605, supra), the court noted that inventory searches are “not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration” (id., at p_, p 2608). Because they are an exception to the warrant requirement, the justification for them does not rest upon probable cause but is determined by the reasonableness of the police procedure in conducting an inventory search. The standard of reasonableness to be applied to such administrative searches is that found in the court’s decision in Delaware v Prouse (440 US 648) which requires that the courts balance the intrusion of the search on the individual’s Fourth Amendment interests against its promotion of legitimate governmental interests (id., at p 654). Applying that test to the search of the defendant’s cigarette case in LaFayette, the Supreme Court held that “[ejxamining all the items removed from the arrestee’s person or possession and listing or inventorying them is an entirely reasonable administrative procedure” (Illinois v LaFayette, supra, at p _, p 2610). The court specifically noted that it was immaterial whether the protection of governmental interests could have been achieved in a less intrusive manner, such as securing the defendant’s shoulder bag in a box or a locker, or whether the police had reason to perceive danger or injury from the container. Holding that the Fourth Amendment standard of “reasonableness” does not require that the least intrusive means for administering neutral and routine procedures be applied to protect governmental interests, the court stated that “it is not ‘unreasonable’ for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures” (Illinois v LaFayette, 462 US 640, _, 103 S Ct 2605, 2610, 2611, supra [emphasis added; n omitted]).
The search conducted here is not distinguishable from the search conducted in LaFayette, although it involved the *391 inventory search of an impounded automobile while in LaFayette the search concerned a shoulder bag taken from the arrestee’s person. The same governmental interests involved in the inventory search of items found on an arrestee’s person are involved in the inventory search of an impounded vehicle except for the need to remove dangerous articles and thereby protect arrestees and others from injuries caused by items on the arrestee’s person while being detained (Illinois v LaFayette, supra, at p _, p 2609; see People v Troiano, 35 NY2d 476).
There is nothing in the record to suggest that this search was a pretext investigative search rather than routine police procedure. Given the unusual location of the bag, the manner in which it was affixed to the car and the apparent effort to conceal it under the dashboard, there is support in the record for the finding of the Appellate Division that the police might reasonably conclude that the bag contained items requiring discovery and inventory and their conduct in opening and securing it was reasonable.
Accordingly, the order of the Appellate Division should be affirmed.